# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**JUAN M. PEREZ and RAHMAN S. ABDULLAH,**
        **Plaintiffs,**

    v.                                                 **Case No. 04-C-1062**

**MATTHEW J. FRANK, et al.,**
        **Defendants.**

## DECISION AND ORDER

Plaintiffs Juan M. Perez and Rahman S. Abdullah filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against staff members and prison officials at Redgranite Correctional Institution (RGCI) and the Wisconsin Department of Corrections (DOC): Matthew J. Frank, Steve Casperson, Cindy O'Donnell, Richard Raemisch, John Ray, Sandy Hautamaki, Ana Boatwright, Jeffrey B. Endicott, Suzanne Dehaan, Sally Wess, Kristine Timm, Thomas Gozinske, Leo Campbell, Ronald Beyah and Sergeant Falke.

Plaintiffs, both Sunni Muslims, were incarcerated at RGCI at all times relevant. On September 27, 2006, I permitted plaintiffs to proceed on the following claims: (1) defendants violated the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, et seq., by preventing plaintiffs from obtaining various religious articles, attending religious services on days important to their faith and adhering to other tenets of their religion; (2) defendants violated the First Amendment's Establishment Clause by establishing rules evincing a preference for Christianity over Islam; (3) defendants violated the Fourteenth Amendment's Equal Protection Clause by treating Christian inmates better than Muslim inmates; (4) defendant Timm retaliated against plaintiff Perez for using the inmate grievance system;

(5) several defendants violated Perez's right to access to the courts by hindering his ability to use the inmate grievance system; (6) certain defendants failed to provide religious training to subordinates; (7) several defendants failed to intervene to prevent others from violating the law; and (5) defendants conspired to cover up their unconstitutional actions. Plaintiffs also raised state law claims but have since abandoned such claims.

Defendant has moved for summary judgment and plaintiffs have moved for summary judgment as to their Free Exercise and RLUIPA claims. Plaintiffs have also filed a motion in limine. All of these motions are ready for resolution.

## I. PRELIMINARY MATTERS

Before turning to the motions, I note that defense counsel notified the court on November 30, 2007 that plaintiff Abdullah wished to voluntarily dismiss his claims against defendants. Further, on December 6, 2007, plaintiff Perez filed a reply brief regarding the plaintiffs' motion in limine in which he removed Abdullah's name from the case caption and stated that Abdullah had notified both him and defense counsel that he had withdrawn from this action. Abdullah has not filed a notice of dismissal, but neither has he contradicted the statements of defense counsel or his co-plaintiff. Further, he has not taken any action to prosecute this case since November 14, 2007. Therefore, it appears that Abdullah intends to withdraw from this case or believes that he has already withdrawn. As such, I will dismiss Abdullah's claims against defendants, and dismiss Abdullah from this action, without further discussion.[1] If Abdullah believes that this action is in error, he may file a

---

[1]Abdullah had pressed a couple of claims independent of Perez, including that defendants violated his rights by denying his request for a miswak, or tooth-stick, and by denying him the ability to attend Jumah, or Friday prayers, while he was on room confinement.

2

motion for reconsideration or a motion to reopen at a later date.  In this decision, I will address the motions for summary judgment only as they pertain to Perez and I will hereinafter refer to Perez simply as "plaintiff."

I also note that defendants suggested the death of defendant John Ray on the record by serving plaintiff with a statement pursuant to Fed. R. Civ. P. 25.  Once the death of a party is suggested on the record, any party, successor or representative of the deceased has 90 days to file a motion for substitution.  Fed. R. Civ. P. 25.  If no motion is made, the action shall be dismissed as to the deceased party.  Id.  Plaintiff has not filed a motion for substitution, thus I will dismiss Ray from this action without further discussion.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The mere existence of a factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party."  Id.  For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit."  Id.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence.  Id. at 325.  Once the moving party's initial burden

3

is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. <u>Id.</u> at 323-24. Neither party may rest on mere allegations or denials in the pleadings, <u>Anderson</u>, 477 U.S. at 248, or upon conclusory statements in affidavits, <u>Palucki v. Sears, Roebuck & Co.</u>, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, <u>Anderson</u>, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. <u>Id.</u> at 248.

The fact that both parties have moved for summary judgment, and thus both parties are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. <u>See</u> Charles Alan Wright et al., 10A <u>Federal Practice and Procedure</u> § 2720 at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. <u>See</u> <u>Mitchell v. McCarty</u>, 239 F.2d 721, 723 (7th Cir. 1957). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. Wright, <u>supra</u>, at 335-37. The fact that one party fails to

4

satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment.  Id.

### III.  RLUIPA AND FREE EXERCISE CLAIMS

**A.    Legal Standard**

RLUIPA prohibits governmental imposition of a "substantial burden on the religious exercise" of an inmate, unless defendants can show that the burden is: (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).  Plaintiff's religious beliefs must be sincerely held in order to establish a protected right under RLUIPA.  See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005).  To show that his rights under RLUIPA were violated, plaintiff must first establish that defendants' actions created a substantial burden on the exercise of his religious beliefs.  42 U.S.C. § 2000cc-2(b); Hernandez v. Commissioner, 490 U.S. 680 (1989); Werner v. McCooter, 49 F.3d 1476, 1480 n.2 (10th Cir. 1995).  While RLUIPA does not define the term "substantial burden," the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). A "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  If plaintiff makes a showing that his sincerely held religious beliefs have been substantially burdened, defendants must come forward with evidence demonstrating that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means."  Id.

5

In the context of the Free Exercise Clause, plaintiff must also make a showing of a "substantial burden"; specifically, he must show that the governmental action burdened a practice or belief that is central to his religion.  Hernandez, 490 U.S. at 699; see also Rogers v. Hellenbrand, 118 Fed. Appx. 80, *82 (7th Cir. Nov. 23, 2004).  And, unlike RLUIPA, a prison regulation challenged on First Amendment grounds will be upheld if it is reasonably related to a legitimate penological interest.  Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004).

Defendants assert that they are entitled to qualified immunity with respect to plaintiff's claims arising under RLUIPA and the Free Exercise Clause.  Qualified immunity is immunity from suit rather than a mere response to liability.  Katz v. Saucier, 533 U.S. 194, 200-201 (2001).  Determining whether a defense of qualified immunity is applicable involves a two-step test.  Id. at 199.  First, I must decide whether "[t]aken in the light most favorable to the party asserting the injury," the "facts alleged" show that defendants' conduct violated a constitutional right.  Id. at 201.  In the event that no statutory or constitutional right would have been violated if the allegations were established, there is no need for further analysis of the qualified immunity issue.  Id.

However, if a violation could be demonstrated based on a favorable view of the parties' submissions, the analysis proceeds to the second step, which requires the court to determine whether the right was clearly established.  Id.  Such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).

6

Plaintiff has the burden of showing that defendants violated his clearly established rights.  Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994).  He need not point to a case involving the exact scenario so long as the unlawfulness of the official action is apparent in light of pre-existing law.  Anderson v. Creighton, 483 U.S. 635, 639 (1987).  However, to invoke a "clearly established" right, plaintiff must point to something more particularized than simply the abstract right guaranteed by federal law.  Id. at 640.

Plaintiff has not contested defendants' arguments pertaining to his claim that defendants violated the First Amendment and RLUIPA by denying him the ability to participate in a religious study group.  Therefore, defendants' motion for summary judgment will be granted as to that claim without further discussion.

## B.    Claims Regarding Religious Property

The DOC regulates inmate property for security purposes.  Currently, Muslim inmates in DOC custody are allowed to possess the following personal religious property: (1) one kufi (cap) that is sewn, one layer of cloth without lining, solid black in color; (2) a one-ounce plastic bottle of religious oil; (3) natural wood or black plastic prayer beads; (4) a prayer rug not exceeding 30" x 54" in size; (5) religious publications; (6) one piece of religious art; and (7) a black lanyard and a pendant with "Allah" written on it in Arabic or English script.  (Lundquist Aff. at ¶ 16)

Plaintiff complains that he was not permitted to wear a white kufi, though he sincerely believes that Muslims should wear white clothing; he was not permitted a prayer rug large enough to avoid touching his feet to the ground or his knees to his chest, though he sincerely believes that he must pray on a clean surface and should not touch his knees to his chest; and he was not permitted to own a silver ring bearing the name of Allah,

7

though he sincerely believes that wearing such ring is a good religious practice, because the DOC only permits inmates to wear wedding rings. Defendants contend that they denied the white kufi and ring pursuant to a compelling government interest – security.

Accepting that plaintiff's religious beliefs are sincerely held, plaintiff has nonetheless failed to present any evidence that any defendant's denial of the requested items substantially burdened his religious exercise, much less burdened a practice central to his religion. As stated, a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers, 342 F.3d at 761. Plaintiff's complaint alleges that the denials of religious property requests substantially burdened his religious exercise, which is sufficient to state a claim, but at the summary judgment stage plaintiff is required to "go beyond the pleadings." Celotex Corp., 477 U.S. at 323.

Though defendants have pointed to plaintiff's lack of evidence, (Defs' Resp. to Pl's Mot for SJ at 6-7), plaintiff has not come forward with any evidence relevant to the effect of the property restrictions on his religious practice. Further, the effect of such restrictions is not obvious such that a fact-finder could infer a substantial burden without specific evidence. Thus, plaintiff's religious property claims fail under both RLUIPA and the Free Exercise Clause. See Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006) (referring to the plaintiff's obligation to present evidence supporting a substantial burden finding) (citing Kaufman v. McCaughtry, 419 F.3d 678, 682 (7th Cir. 2005)); Kikumura v. Hurley, 242 F.3d

8

950, 961 (10th Cir. 2001) (same); Shaw v. Frank, No. 05-C-0872, 2008 U.S. Dist. LEXIS 7422, at *37-38 (E.D. Wis. Jan. 31, 2008) (same).[2]

Further, even if were to I assume that the denials of religious property substantially burdened plaintiff's religious exercise, defendants would be entitled to qualified immunity regarding these claims. Plaintiff has not pointed to any case in which a court has concluded that the denial of similar requests amounted to a substantial burden on a prison inmate's religious exercise or found that an inmate has a right to such property. I have located one case regarding an inmate request for a white kufi and a larger prayer rug, which found no substantial burden, and thus no Free Exercise violation, as a matter of law. See Cole v. Litscher, No. 04-C-116, 2005 U.S. Dist. LEXIS 4160, *22 (W.D. Wis. Mar. 15, 2005). This court's legal conclusions were reasonable; therefore it was reasonable for defendants to reach the same conclusion. I have found no cases regarding a silver ring, but I conclude that it was reasonable for defendants to conclude that the denial of the ring would not substantially burden any religious exercise and rely on their interest in maintaining security in the prison. Thus, defendants are entitled to summary judgment on these claims. For the same reasons, plaintiff is not entitled to summary judgment.

## C. Claims Regarding Religious Diet

On February 15, 2004, plaintiff asked to be provided with a Halal diet including Halal meat and utensils other than those used by the general inmate population. The next day, plaintiff was called to defendant Timm's office, where Timm and defendant Campbell

---

[2]Plaintiff argues that defendants "failed to demonstrate . . . through a single shred of evidence that they have not burdened the plaintiffs' religious exercise." (Pl's Reply Br. Filed Nov. 14, 2007). This argument is an attempt to shift plaintiff's burden onto defendants

9

informed plaintiff that his request for a religious diet would be denied. Campbell noted that there were alternative diets available to Muslim inmates including a vegetarian option. The parties appear to agree that a vegetarian diet comports with Islamic dietary restrictions, though plaintiff asserts that he should eat all food that he is permitted to eat. In addition, defendants have presented evidence that they have a compelling government interest in ensuring that prison meal preparation is safe and cost-effective, which would be impossible if defendants had to provide inmates with individualized meals.

Plaintiff has adduced no evidence indicating that defendants' unwillingness to provide him with Halal meat substantially burdened his practice of religion. See Borzych, 439 F.3d at 390. Given that defendants were willing to provide plaintiff a vegetarian diet, plaintiff's desire for Halal meat is more akin to a culinary preference than a religious exercise.[3] And even accepting as true that plaintiff sincerely believes that he should eat all of the foods permitted by his religion, this does not show that the inability to eat a single kind of food imposes a substantial burden on plaintiff's religious exercise. Federal courts examining very similar facts have generally agreed that a Muslim inmate cannot show that the denial of Halal meat amounts to a substantial burden on his religious exercise when vegetarian options are available. See, e.g., Patel v. United States Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008); Watkins v. Shabazz, 180 Fed. Appx. 773, 775 (9th Cir. 2006); Shaheed Allah v. Jordan-Luster, No. 04-1083, 2007 U.S. Dist. LEXIS 56631, at *17-18 (C.D. Ill. Aug. 3, 2007); Spruel v. Clarke, No. C06-5021 RJB, 2007 U.S. Dist. LEXIS 39772, at *8-9 (W.D. Wash. May 31, 2007); Abdul-Malik v. Goord, No. 96 CIV. 1021 (DLC), 1997

---

[3]Plaintiff argues that a meat-free diet would be unhealthy but has not presented any evidence supporting this argument.

10

U.S. Dist. LEXIS 2047, at *19-20 (S.D.N.Y. Feb. 27, 1997).  Further, plaintiff has not presented any evidence regarding the use of regular utensils on his religious practice.

And even if I were to assume that the denial of Halal meat and separate utensils amount to a substantial burden, it was not clearly established in 2004 that plaintiff had a right under RLUIPA or the First Amendment to receive Halal meat and separate utensils. Tayr Kilaab Al Ghashiyah (Kahn) v. Wis. Dep't of Corr., No. 01-C-10, 2006 U.S. Dist. LEXIS 74835 (E.D. Wis. Sept. 29, 2006).  The Supreme Court has yet to rule on whether prisoners are required under the First Amendment or RLUIPA to provide inmates with meals that meet specific requirements of their religion.  Further, not only has plaintiff not pointed to case law establishing a right to Halal meat and separate utensils, as stated, the case law indicates the opposite.  As to the Free Exercise Clause, one court faced with a similar claim by a Muslim inmate conducted its own review of eleven pre-2002 cases on the issue and concluded that

> the vast majority of these courts ha[ve] determined that a prison permissibly discharge[s] its constitutional duty to respect the dietary beliefs of Muslim inmate by offering an alternative, pork-free diet, and more broadly, that the law permit[s] prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population.

Hudson v. Maloney, 326 F. Supp. 2d 206, 211 (D. Mass 2004) (citing, in part, Kahey v. Jones, 836 F.2d 948, 949 (5th Cir. 1998)) see also Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993); Abdullah v. Fard, 974 F. Supp. 1112, 1118-19 (N.D. Ohio 1997).

There are fewer cases addressing RLUIPA, but the courts agree that "[a]ll that is required for a prison diet not to burden an inmate's free exercise of religion is 'the provision of a diet sufficient to sustain the prisoner in good health without violating [his religion's]

11

dietary laws.'" Abdul-Malik, 1997 U.S. Dist. LEXIS 2047, at *19-20; see also Patel, 515

F.3d 807; Watkins v. Shabazz, 180 Fed. Appx. at 775 (9th Cir. 2006); Shaheed Allah, 2007

U.S. Dist. LEXIS 56631, at *17-18; Spruel, 2007 U.S. Dist. LEXIS 39772, at *8-9.

As such, in 2004, it was reasonable for defendants to conclude that they could

lawfully deny plaintiff's request for Halal meat and separate kitchen utensils. Therefore,

I will grant defendants' motion for summary judgment as to this claim and deny plaintiff's

motion for summary judgment.

**D.      Claim Regarding Urinalysis Policy**

It is plaintiff's sincerely held religious belief that he should sit while urinating to avoid

splattering urine, "which is a means for being tortured in the grave." (Perez Dec. in Supp.

of Pl.'s Mot. for SJ at ¶ 247.) On February 9, 2004, plaintiff was made to offer a urine

sample while standing.

Defendants assert that plaintiff failed to exhaust his urinalysis claim. The Prison

Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides

that

> [n]o action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a). This exhaustion requirement requires "proper exhaustion," meaning

that a prisoner must complete the administrative review process in accordance with the

applicable procedural rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (holding

that a prisoner does not satisfy exhaustion requirement by filing procedurally defective

administrative grievances or appeals).

12

On February 20, 2004, plaintiff filed Inmate Complaint RGCI-2004-5719 regarding RGCI's urinalysis policy. Plaintiff argued that he was forced to act contrary to his religious beliefs when prison officials made him urinate while standing. On February 19, 2004, the complaint was rejected under Wis. Admin. Code § DOC 310.11(5)(g) because the issue was previously addressed. Plaintiff appealed and the rejection was affirmed on March 5, 2004. It is defendants' burden to prove the defense of failure to exhaust, and I find it unclear whether the ground for rejection here amounts to a procedural deficiency in the complaint. Therefore, I cannot find that plaintiff did not exhaust his urinalysis claim.

However, assuming that plaintiff sincerely believes that his religion counsels him to urinate while sitting, plaintiff has not adduced any evidence supporting a conclusion that his inability to sit while urinating for a urinalysis test substantially burdened his ability to practice his religion, i.e., that the restriction bore "a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers, 342 F.3d at 761. Further, even if the urinalysis policy could amount to a substantial burden, in 2004, it was entirely reasonable for defendants to conclude that requiring plaintiff to stand while giving urine samples for urinalysis so that they could witness the giving of the sample was lawful. Although plaintiff objected for religious reasons, It was reasonable for defendants to find that the requirement would not substantially burden plaintiff's ability to practice his religion and to conclude that they had a compelling interest in monitoring the urinalysis process as vigilantly as possible. Plaintiff has not pointed to any case suggesting otherwise. As such, I will grant defendants' motion for summary judgment as to this claim and deny plaintiff's motion for summary judgment.

### E.    Claims Regarding Religious Holidays

The parties agree that Sunni Muslims celebrate at least two religious holidays, 'Eid-ul-Fitr and 'Eid-ul-Adha. 'Eid-ul-Fitr marks the end of Ramadan and 'Eid-ul-Adha marks the end of the period of Hajj, or pilgrimage to Mecca. Each of the 'Eids are generally celebrated with eating and a congregational prayer. DOC rules permits each religious group to hold only one "feast" per year, meaning that the group may gather in an area separate from the general prison population for prayer, religious discussion and eating. The food aspect of a "feast" often consists of a regular institutional food, but can consist of special food purchased through approved vendors. RGCI's Muslim inmates have traditionally held their annual feast at 'Eid-ul-Fitr, at the end of Ramadan.

### 1.    'Eid-ul-Fitr

In 2003, 'Eid-ul-Fitr fell on November 25. Muslim inmates at RGCI, including plaintiff, attended a religious feast, but plaintiff complains that it was not a proper feast because the attendees did not get extra portions of food and were not served traditional Islamic dishes or Halal meat. Further, plaintiff complains that Muslims were not able to congregate during the proper time of the day. The gathering was held between 11:55 a.m. and 12:45 p.m. It is plaintiff's sincerely held belief that an 'Eid-ul-Fitr celebration – which marks the breaking of the Ramadan fast – should have been held between 7:04 a.m. and 11:40 a.m.

Defendants assert that plaintiff failed to exhaust this claim. As stated, a prisoner must properly exhaust all claims against the state. On December 2, 2003, plaintiff filed Inmate Complaint Number RGCI-2003-39498, asserting that he was denied a proper feast

14

at the November 25 'Eid-ul-Fitr gathering and that it was held at an inappropriate time. The complaint was rejected for containing more than one issue in violation of Wis. Admin. Code § DOC 310.09(1)(e). Plaintiffs timely appealed, but the decision was affirmed. Defendants argue that plaintiff's failure to comply with procedural rules doomed his attempt to exhaust this claim. See Woodford, 126 S. Ct. at 2382.

Plaintiff points out that the complaint was improperly rejected because DOC rules provide that if an inmate includes more than one issue in a single complaint, the complaint should be returned to the inmate for refiling rather than rejected. Wis. Admin. Code § DOC 310.09(3); Wis. Admin. Code § DOC 310.11. Defendants do not deny that this is the correct procedure but contend that plaintiff could have refiled his complaint even though it was rejected. However, the rejection of Complaint Number RGCI-2003-39498 states only that plaintiff could appeal the rejection of his complaint within 10 days and that the reviewing authority would only review the basis for the rejection of the complaint. While a prisoner's lack of awareness of a grievance procedure does not excuse his failure to comply, Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), the administrative process may be rendered unavailable where prison policy is misleading or confusing, Brown v. Croak, 312 F.3d 109, 111-112 (3d Cir. 2002); Hemphill v. New York, 380 F.3d 680, 690 (2d Cir. 2004). Though defendants contend that plaintiff could have refiled his complaint, there is no administrative rule that states as much and the rejection of plaintiff's complaint clearly indicated that his recourse was appealing the rejection rather than refiling the complaint. As such, I will reject defendants' exhaustion defense regarding this claim.

Plaintiff's 'Eid-ul-Fitr claim raises two issues: the timing of the 2003 feast and the food served at the feast. I will address the implications of each of these issues in turn.

15

Plaintiff and defendants agree that 'Eid-ul-Fitr is an important, religiously significant Islamic holiday and that its central element involves a prayer that should be performed between sunrise and noon on the day after the last day of Ramadan fasting. (Perez Dec. in Supp. of Pl.'s Mot. for SJ at ¶ 230); (Wheeler Aff. at 7). Plaintiff alleges that because Muslims were not permitted to congregate until 11:55 a.m., he was unable to perform the 'Eid-ul-Fitr prayer in 2003. Given that the parties agree as to the significance and appropriate timing of the 'Eid-ul-Fitr prayer, and defendants do not dispute that plaintiff was unable to perform this prayer due to the timing of the planned 2003 feast, I find that a jury could infer that defendants' refusal to hold the 2003 'Eid-ul-Fitr feast earlier in the day amounted to a substantial burden on plaintiff's exercise of religion.

Thus, I turn to whether defendants have shown a compelling government interest in scheduling the feast when they did or whether an official could have reasonably believed, in 2003, that the scheduling of the feast did not amount to a substantial burden. Review of defendants' briefs reveals that they do no assert that the scheduling was justified by any state interest. In denying plaintiff use of the room earlier in the day, on November 23, 2003, defendant Campbell told former plaintiff Abdullah that there was no chapel space available in the morning. However, plaintiff has presented evidence suggesting that the chapel was empty after 9:30 a.m. Defendants contend that such evidence is inadmissible. However, regardless, defendants have not presented evidence to this court that the chapel was unavailable at an earlier time and have not argued that, assuming it was booked by another religious group, that this amounts to a compelling government interest or a legitimate penological interest.

16

Further, I cannot find that qualified immunity applies to this issue. Not only was it established that 'Eid-ul-Fitr was a very significant date on the Islamic calendar, <u>Ford v. McGinnis</u>, 352 F.3d 582, 597 (2d Cir. 2003), but defendants apparently knew that it was a significant holiday. Further, it was clear in late 2003 that a restriction that substantially burdened the observance of such a holiday was unlawful in the absence of any state interest justifying it. <u>Id.</u>; <u>see also</u> <u>Cranford v. Bayer</u>, 147 Fed. Appx. 947 (4th Cir. Sept. 13, 2005) (relying on a pre-2003 case); <u>Parks-El v. Fleming</u>, 212 Fed. Appx. 245 (4th Cir. Jan. 10, 2007) (relying in part on <u>Ford</u>, 352 F.3d at 593). Thus, because defendants have not suggested any state interest justifying the refusal to hold the 2003 'Eid-ul-Fitr feast during the religiously prescribed period, they are not entitled to qualified immunity and I will deny their motion for summary judgment on this issue. However, I will also deny plaintiff's motion for summary judgment regarding this issue because plaintiff's evidence does not conclusively establish a substantial burden on his religious exercise, thus a genuine issue of material fact remains.

My analysis is different regarding the food served at the 'Eid-ul-Fitr feast. Plaintiffs complain that the "feast served on November 25, 2003, was not special in anyway, nor were there any extra portions, nor was the meal served Halal as there was meat served that was not Halal certified." (Perez Dec. in Supp. of Pl.'s Mot. for SJ at ¶ 231.) Defendants have presented evidence that vegan and vegetarian food was available to plaintiff "throughout [his] incarceration" at RGCI, (Campbell Aff. at ¶ 29), and plaintiff has not asserted that Muslims were made to eat non-Halal meat during the 'Eid-ul-Fitr feast. As stated with regard to plaintiff's more general diet claim, so long as a Muslim inmate is able to avoid non-Halal meat while sustaining his health, there is no substantial burden on

17

his religious exercise.  Abdul-Malik, 1997 U.S. Dist. LEXIS 2047, at *19-20.  And plaintiff has not presented any evidence that the lack of "extra portions" or traditional Islamic foods is religiously significant such that the denial of these things could amount to a substantial burden on his religious exercise.  Plaintiff has averred that it is his "religiously held belief" that the 'Eid feast should include traditional Islamic foods, but this goes to the sincerity of his belief, not to the significance of such foods.[4]  As such, while plaintiff may proceed with his claim that he was denied the right to pray the communal prayer for 'Eid-ul-Fitr, I will not permit plaintiff to proceed with his claim that he was denied extra portions of food and traditional food at RGCI's 2003 'Eid-ul-Fitr feast.

## 2.   'Eid-ul-Adha

In 2004, 'Eid-ul-Adha fell on February 1.  In December 2003, former plaintiff Abdullah filed a group request with defendants Timm and Endicott asking for a feast for the upcoming holiday, including traditional Islamic foods and religious congregation.  On January 29, plaintiff submitted a request asking "what, if any, accommodations will be made" for 'Eid-ul-Adha.  (Wess Aff. Ex. 1008.)  It is not clear whether plaintiff intended this to be a follow up to Abdullah's request or a separate request for a different sort of service for 'Eid-ul-Adha.  Regardless, defendants Campbell, Timm and Endicott denied both requests.  On February 1, 2004, there was no 'Eid-ul-Adha celebration at RGCI.

On February 2, 2004, plaintiff complained about the lack of an 'Eid-ul-Adha service and referred to the denial of his January 29 request.  The complaint was denied on the

---

[4]To the extent that plaintiff is comparing the portions of food with the portions served on Christian holidays, I will address such comparison in discussing the First Amendment's Establishment Clause.

18

grounds that no one informed staff that a community volunteer could lead a religious service on that day and plaintiff had not requested use of the chapel within the permissible period. On February 17, 2004, former plaintiff Abdullah filed a group complaint regarding the lack of an 'Eid-ul-Adha feast and referred to the denial of his December 2003 request. The complaint was denied on the ground that DOC rules permit each religious group to have only one feast per year.

Defendants contend that plaintiff failed to exhaust a claim regarding the request for a feast because, although he signed on to a group grievance regarding the lack of an 'Eid-ul-Adha feast, in Inmate Complaint RGCI-2004-5572, the appeal of the rejection of that complaint was untimely. Plaintiff appears to concede that the appeal was untimely, but argues that this is because the complainants did not receive a copy of the initial rejection until long after it was issued. He presents evidence that the group appealed the decision within ten days of receiving the decision. Because there is conflicting evidence as to whether plaintiff or defendants caused the untimely appeal, I will not dismiss this claim as unexhausted at this time.

As to the merits of plaintiff's claim, plaintiff's evidence is sufficient to permit a jury to infer that the denial of an 'Eid-ul-Adha celebration, whether as a feast or some other gathering, amounted to a substantial burden on plaintiff's exercise of religion. Plaintiff has presented evidence that the restriction kept him from praying and communing with fellow believers on what all parties agree is an important Islamic holiday. I note that other courts have found that denying an inmate the ability to recognize a religious holiday poses a substantial burden on religious exercise. See, e.g., Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006); Lovelace v. Lee, No. 7:03cv00395, 2007 U.S. Dist. LEXIS 62522, at *53

19

(W.D. Va. Aug. 24, 2007); but see Izquierdo v. Crawford, No. 1:05CV192, 2007 U.S. Dist. LEXIS 71608, at *14-15 (E.D. Mis. Sept. 26, 2007).

Defendants have asserted that they had a compelling interest in denying the request for an 'Eid-ul-Adha feast because of the limitation of each religion to one feast per year, which is the least restrictive means of preserving the DOC's "limited resources" and dealing with "security concerns." (Def.'s Res. to Pl.'s Mot. for SJ at 18.) See Charles v. Verhagen, 220 F. Supp. 2d 937, 946-47 (W.D. Wis. 2002) (accepting this argument). However, this does not address plaintiff's argument that the 'Eid-ul-Adha feast would have been the first Muslim feast in 2004. Defendants have not suggested any reason, much less a compelling government interest, that officials decided the 2004 Muslim feast should fall on 'Eid-ul-Fitr rather than 'Eid-ul-Adha, and plaintiff has averred that he believes 'Eid-ul-Adha is the more important holiday. Further, this does not address the denial of any 'Eid-ul-Adha service.

Defendants are not entitled to qualified immunity regarding this claim because it was clearly established in 2003 and 2004 that, in the absence of any government interest, the denial of a request to celebrate of a major Islamic holiday would violate RLUIPA and the Free Exercise Claim. See, e.g., Ford, 352 F.3d at 597; Charles, 220 F. Supp. 2d at 946. As such, I will deny defendants' motion for summary judgment as to plaintiff's RLUIPA and Free Exercise Claims regarding 'Eid-ul-Adha. I will also deny plaintiff's motion for summary judgment as to this claim because plaintiff's evidence does not conclusively establish a substantial burden on his religious exercise, thus a genuine issue of material fact remains.

## IV. ESTABLISHMENT CLAUSE CLAIM

The Establishment Clause provides that "Congress shall make no law respecting the establishment of religion." U.S. Const. amend. I. It prevents the government from

promoting or affiliating with any religious doctrine or organization. Freedom From Religion Found. v. Bugher, 249 F.3d 606, 610 (7th Cir. 2001) (citing Co. of Allegheny v. ACLU, 492 U.S. 573, 590 (1989)). The Supreme Court has held that a governmental action may be unconstitutional if it amounts to religious preferentialism, either among religions or between religion and non-religion and irreligion. See e.g., Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 703 (1994); Epperson v. Arkansas, 393 U.S. 97, 103-04 (1968); Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To determine whether government action violates the establishment clause, courts employ the test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971). Under the test, a government policy or practice violates the establishment clause if: (1) it has no secular purpose; (2) its primary effect advances or inhibits religion; or (3) it fosters an excessive entanglement with religion. Id. at 612-13; Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005).

Plaintiff complains that defendants have expressed a preference for Christianity because RGCI celebrates the religious holidays of Christmas, Thanksgiving, Easter, and New Years with special foods.[5] It is undisputed that RGCI permits each religion to have one full religious feast per year, consisting of a regular institution meal or a special meal prepared by the institution and served to adherents of the religion in a special gathering place. It is also undisputed that RGCI serves regular institutional meals on Christmas, Easter, New Years Day and Thanksgiving, though it generally serves larger portions of

---

[5]Plaintiff has also asserted that Christians enjoy other benefits, but has not presented any admissible evidence supporting such assertions.

food than on other days.[6]  The larger portions are served to the entire institution and are not accompanied by prayer or any other religious celebrations.  RGCI does not serve larger portions of food on any Islamic holidays.

A fact-finder could not find an Establishment Clause violation based on these facts. Though plaintiff has presented evidence that defendants did not serve Muslims special food at their 2003 'Eid-ul-Fitr feast, he has not presented evidence that defendants served other religious groups special food at their own religious feasts.  Thus, this claim relates only to the larger portions of food served to all inmates in the regular dining area on Thanksgiving, Christmas and Easter.[7]  As such, the relevant questions are whether the purpose of serving the larger portions was advancing or inhibiting religion, whether its primary effect was advancing or inhibiting religion, and whether it fostered excessive entanglement with religion.  See Milwaukee Deputy Sheriffs Ass'n v. Clarke, 513 F. Supp. 2d 1014, 1018 (E.D. Wis. 2007) (citing Lemon, 403 U.S. at 612-13).

A fact-finder could not answer any of these questions in the affirmative.  The government may recognize holidays that have both religious and secular significance without running afoul of the Establishment Clause.  It "may celebrate Christmas in some manner and form," so long as it does not do so "in a way that endorses Christian doctrine." Co. of Allegheny v. ACLU, 492 U.S. 573, 601 (1989).  And it may recognize a legal holiday that "coincides with what, to some, is a religious day." Bridenbaugh v. O'Bannon, 185 F.3d

---

[6]Plaintiff asserts that such foods as a cupcake served on Easter amount to special, religiously significant foods, but he does not explain this assertion and I do not think it is significant.

[7]I take judicial notice of the fact that New Years Day is not a religious holiday, and thus I need not apply the Lemon test to the extra portions of food served on that day.

22

796, 801 (7th Cir. 1999). I cannot find that the extra food given to all inmates on Thanksgiving, Christmas and Easter had a primarily religious purpose or effect, or that it fostered entanglement with religion. Whatever benefit the extra food conferred on Christians was "'indirect, remote, and incidental.'" Id. at 802 (quoting Lynch v. Donnelly, 465 U.S. 668, 683 (1984)). As such, I will grant defendants summary judgment as to plaintiff's Establishment Clause claim.

## V.  EQUAL PROTECTION CLAIM

To comply with the Equal Protection Clause, governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. See Caldwell v. Miller, 790 F.2d 589, 609 (7th Cir. 1986). A prison regulation that treats inmates unequally will be upheld if it is reasonable in light of legitimate penological interests. May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000).

The Equal Protection Clause is not applicable where a more specific right is at issue. Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005). In Conyers, the Seventh Circuit declined to consider an inmate's claim that he was not allowed to participate in Ramadan as implicating both the Free Exercise and Equal Protection Clauses because his First Amendment claim "gain[ed] nothing by attracting additional constitutional labels." Conyers, in turn, relies on Graham v. Connor, 490 U.S. 386, 395 (1989), in which the

23

Supreme Court held that constitutional claims are to be analyzed under the most "explicit source[s] of constitutional protection."

Here, Plaintiff's Equal Protection claim is essentially a reiteration of his Establishment Clause claim. And, even though I granted defendants summary judgment as the Establishment Clause, the claim is more appropriately analyzed under that provision. Thus, pursuant to Conyers and Graham, I will grant defendants' motion for summary judgment as to plaintiff's Equal Protection claim.

## VI. RETALIATION CLAIM

Retaliation against a prisoner for his use of the courts or of the administrative complaint system may give rise to a valid cause of action under § 1983. See Black v. Lane, 22 F.3d 1395, 1401 (7th Cir. 1994). To establish retaliation, a plaintiff must demonstrate: 1) a chronology of events from which retaliation could be inferred; and 2) that retaliation was a motivating factor behind the defendants' conduct. Babcock v. White, 102 F.3d 267, 276 (7th Cir. 1996). At the summary judgment stage, a plaintiff must submit evidence that his grievances were "a substantial or motivating factor" in the prison official's conduct. Spiegla v. Hull, 371 F.3d 928, 942 (7th Cir. 2004); Brookins v. Kolb, 990 F.2d 308, 315 (7th Cir. 1993). Speculation based on suspicious timing alone does not support a reasonable inference of retaliation. Burks v. Wis. Dep't of Transp., 464 F.3d 744 (7th Cir. 2006)(quoting Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000)).

The retaliation inquiry should be undertaken "in light of the 'general tenor' of Sandin, which 'specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management.'" Babcock, 102 F.3d at 275 (quoting Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995)). Thus, courts should "afford appropriate deference and flexibility" to

24

prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. Id. at 275.

Plaintiff alleges that he was called into defendant Timm's office shortly after submitting a request to be provided a Halal diet. According to Timm, she requested that plaintiff send his correspondence regarding religious requests or issues to her before sending multiple letters to multiple persons about the same issue, since the requests would ultimately be routed to her anyway. She states that she did not instruct him to stop filing complaints or requests for religious property. Plaintiff later filed a grievance stating that Timm had asked him "what was going on with him lately and why was he making all these requests, writing letters, and filing complaints." (Wess Aff. Ex. 1013). "Timm went on to state that complainant was not making any friends with his actions." Id. Then, Timm told him that he "lived in her unit and that all his efforts . . . were being redirected to her so he needed to speak to her first as it would all come back to her." Id.

I am not persuaded that retaliation can be inferred from this chronology of events. The parties agree that Timm advised plaintiff to direct his requests for religious property to her because he had been submitting his requests to the wrong administrators and because the requests would eventually end up on her desk. Although Timm's remark that plaintiff was "not making any friends" might have been unprofessional, it could not prove retaliation. Further, there is no indication that Timm ever instructed plaintiff to stop filing inmate complaints or requests for religious property or took any other action to stop him from doing so, or that Timm's conversation with plaintiff injuried plaintiff any way. After the meeting in question, plaintiff filed several more grievances, which were processed

25

normally.  For these reasons, defendants' motion for summary judgment will be granted as to plaintiff's retaliation claim.

## VII.  ACCESS TO THE COURTS CLAIM

Plaintiff avers that defendants Wess, Gozinske, Endicott, Ray, Hautamaki, Raemisch, O'Donnell and Frank "sought to hinder him in exhausting administrative remedies to petition the court for redress of grievances."  (Compl. at ¶ 458).  Defendants contend that plaintiff failed to exhaust this claim and, regardless, they are entitled to summary judgment as to the claim.

### A.     Exhaustion

On December 14, 2003, plaintiff filed Inmate Complaint RGCI-2003-41349, complaining that defendant Wess was interfering with his ability to exhaust his administrative remedies by mis-characterizing his previous inmate complaint regarding Ramadan; failing to adequately investigate the complaint, thereby discouraging him from using the ICRS; failing to discharge her duties in processing his complaints; and improperly rejecting his complaint.  On December 19, 2003, the complaint was rejected for containing more than one issue.  Plaintiff appealed, and the dismissal was affirmed.  Plaintiff did not file a complaint regarding a claim of access to the courts against any other defendant or pertaining to any other matter.

For the same reason that I found that plaintiff exhausted administrative remedies with respect to 'Eid-ul-Fitr claim, namely, confusion regarding plaintiff's ability to refile his complaint rather than appeal the rejection, I will not dismiss plaintiff's access to the courts claim against Wess regarding the matters in Inmate Complaint RGCI-2003-41349 for

26

failure to exhaust.  However, one purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation, and plaintiff did not put prison officials on notice that he sought to pursue an access to the courts claim of the magnitude alleged in his amended complaint.  Thus, plaintiff failed to exhaust his access to the courts claim to the extent it sets forth allegations beyond the scope Inmate Complaint RGCI-2003-41349.

**B.     Merits**

Prisoners have a constitutional right of access to the courts and must be given a reasonably adequate opportunity to present their claims.  Bounds v. Smith, 430 U.S. 817, 825 (1977).  Such access must be effective and meaningful.  Id. at 822. To succeed on a claim of denial of access to the courts, a plaintiff must show that any alleged interference caused actual injury and hindered efforts to pursue a legal claim respecting a basic constitutional right.   Lewis v. Casey, 518 U.S. 343, 351 (1996).   The actual injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an absolute deprivation of access to all legal materials."  Id. at 353 n.4.  Failure to identify some detriment that is linked to an adverse decision in, or inability to litigate, a case "is fatal . . . under any standard of sufficiency."  Martin v. Davies, 917 F.2d 336, 340 (7th Cir. 1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings").  Delay and inconvenience do not rise to a constitutional deficiency.  Campbell v. Miller, 787 F.2d 217, 229 (7th Cir. 1986); Gentry v. Duckworth, 65 F.3d 555, 559 (7th Cir. 1995).

Plaintiff has failed to present any evidence that Wess's alleged interference with his grievances frustrated his ability to litigate this case or any other legal proceeding.  See

Lewis, 518 U.S. at 351. To the extent plaintiff asserts that the some litigation was merely delayed, this does not rise to a constitutional deficiency. See Campbell, 787 F.2d at 229. Thus, I will grant defendants' motion for summary judgment as to this claim.

### VIII. FAILURE TO TRAIN CLAIM

The situations in which a failure to train may subject a government official to liability for a constitutional violation are quite limited. See Sanville v. McCaughtry, 266 F.3d 724, 739 (7th Cir. 2001) (stating that failure to train claims are usually maintained against municipalities, not individuals). A supervisor may not be liable simply because he had authority over someone else who violated a detainee's constitutional rights. Rather, the plaintiff must show that the supervisor's actions (or his failure to act) helped to cause the constitutional violation. Gentry, 65 F.3d at 561. More specifically, a plaintiff must show that the official knew that his training was inadequate to handle a particular situation and that a constitutional violation was likely without improvements. Kitzman-Kelley v. Warner, 203 F.3d 454 (7th Cir. 2000); Robles v. City of Fort Wayne, 113 F.3d 732 (7th Cir. 1997).

Plaintiff asserts that defendants Frank, O'Donnell and Casperson failed to provide religious training for defendant Endicott, RGCI's warden during the relevant period, and that Endicott in turn failed to provide religious training for his subordinates, specifically defendants Campbell, Timm and Boatwright. Defendants have presented evidence that the DOC's Director of Adult Institutions instructed wardens to arrange for religious training for selected staff members and that RGCI has trained all necessary staff on religious practices and policy. Endicott avers that he does not recall whether he trained Campbell, Timm or Boatwright on the newest religious policies, but states that he does not believe that they need additional training.

28

Plaintiff has not submitted any admissible evidence in support of his failure to train claim. Plaintiff has affirmatively averred that defendants failed to conduct training, but has not explained how he acquired the knowledge necessary to make such a sweeping statement in a sworn affidavit. See Fed. R. Civ. P. 56(e). To be sure, "[m]emorializing mere speculation in the form of an affidavit does not convert the speculation into competent evidence." Gonzalez v. Litscher, 230 F. Supp. 2d 950, 962 (W.D. Wis. 2002). Even assuming that plaintiff prevails on his claim that certain defendants violated his rights related to the 'Eid feasts, this does not indicate that administrative officials had reason to know that such defendants required special training. Thus, I will grant defendants' motion for summary judgment as to plaintiff's failure to train claims.

## IX. FAILURE TO INTERVENE CLAIM

An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994); Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986). An official will satisfy the personal involvement requirement of § 1983 if he deliberately disregards the plaintiff's constitutional rights. See Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004). An official is personally involved if: a) he or she participates directly in the constitutional deprivation, b) acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent. Rascon, 803 F.2d at 274; Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

29

Plaintiff claims that defendants failed to intervene to prevent: (1) the denial of plaintiff's request for religious practices and property; (2) the discrimination against Sunni Muslims; and (3) the enforcement of a policy preventing plaintiff from acting in accordance with his religious beliefs. Also, defendants Frank, Raemisch and Ray failed to prevent defendants Wess, Gozinske and Endicott from establishing a new internal management procedure which prevented plaintiff from having constitutional violations addressed.

In support of his failure to intervene claims, plaintiff has submitted the following evidence: (1) plaintiff wrote defendant Boatwright a letter informing him that defendant Timm was ignorant of her job duties and did not have any religion training; (2) former plaintiff Abdullah wrote defendant Casperson to complain that he was improperly forced to provide a urinalysis sample while standing pursuant to a policy enforced by defendants Endicott, Hautamaki and O'Donnell; and (3) plaintiff wrote defendant Casperson to complain that defendants Hautamaki and O'Donnell mishandled Inmate Complaint RGCI-2003-39710 inasmuch as they attempted to cover up for defendants Campbell, Timm, Endicott and Boatwright for improperly processing his request for a silver ring.

Review of plaintiff's evidence does not convince me that prison officials were aware that a constitutional violation had been committed, thus triggering their duty to take steps to intervene. See Sornberger v. City of Knoxville, 434 F.3d 1006, 1019 (7th Cir. 2006); Windle v. City of Marion, 321 F.3d 658, 663 (7th Cir. 2003). The letter that plaintiff reportedly sent to Boatwright is not addressed to Boatwright and there is no indication that Boatwright received a copy of this document. Regardless, I have already found that there is no evidence that certain defendants did not receive religious training and have

30

determined that there is no evidence that defendants violated plaintiff's rights regarding his religious property requests or the prison's urinalysis policy.

Therefore, I will grant defendants' motion for summary judgment as to plaintiff's failure to intervene claim.

## X. CONSPIRACY CLAIMS

Plaintiff avers that defendants conspired against him to cover up staff misconduct and violations of plaintiff's rights. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant(s) in joint activity with the State or its agents." Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003) (internal quotation marks and citations omitted). Evidence of a conspiracy cannot be speculative. Id. Therefore, to succeed on § 1983 conspiracy claim, plaintiff must "adduce evidence showing that defendants reached an understanding to deprive him of his constitutional rights." Mark v. Gustafson, 482 F.Supp. 2d 1084, 1091 (W.D. Wis.) (citing Williams, 342 F.3d at 785)).

Plaintiff asserts three different conspiracy claims. First, he asserts that defendants Hautamaki, O'Donnell and Wess attempted to cover up staff misconduct by committed by defendants Campbell, Timm, Endicott and Boatwright related to the denial of the silver ring. (Compl. at ¶¶ 266 & 274). Next, he asserts that defendants Wess, Gozinske, Endicott, Ray, Hautamaki, Raemisch, O'Donnell and Frank covered up for the violation of plaintiff's rights regarding the denial of the silver ring, white kufi, larger prayer rug, and Halal meat, in part by permitting complaint examiners to reject grievances containing more than one issue rather than returning them, prohibiting plaintiff from filing more than two complaints

31

per week and inadequately investigating complaints. (Compl. at ¶ 1-62, 74-140, 305-14, 375-416, 438-43, 450-55). Finally, plaintiff asserts that defendants Wess, Endicott, Hautamaki and Boatwright conspired to implement a new policy for processing religious requests in order to cover up for the actions of defendants Campbell, Timm, Endicott and Boatwright. (Compl. at ¶ 489).

Plaintiff's first conspiracy claim fails because I have found that the denial of plaintiff's request for a silver ring did not deprive him of his constitutional rights, therefore he is precluded from prevailing on a conspiracy claim based on the same. See Williams, 342 F.3d at 785. As to plaintiff's second conspiracy claim again, plaintiff cannot prove a conspiracy on the basis of permissible denials for property. See id. Further, I see no reason that the administrative rules regarding grievances are unlawful and, to the extent that prison officials fail to comply with those rules in a way that could confuse an inmate, as discussed, it does not preclude access to the courts. Finally, plaintiff has not submitted any evidence supporting his third conspiracy claim. It is not even clear what the new policy is that he complains of. As such, I will grant defendants' motion for summary judgment regarding plaintiff's conspiracy claims.

## XI. MOTION IN LIMINE

As a final matter, plaintiff has filed a "motion in limine" asking that I strike the affidavits of Bruce Muraski and Brannon Wheeler because defendants failed to comply with the rules regarding expert testimony. Specifically, plaintiff contends that defendants have not disclosed the number of times Muraski and Wheeler have previously testified as expert witnesses, they have not disclosed the amount of compensation these individuals received in this case and they failed to establish the basis for the expert opinions.

32

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the district judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The court functions as a "gatekeeper" in applying Rule 702 to exclude unreliable expert testimony. Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 148 (1999).

The Muraski affidavit concerns plaintiffs' requests for religious items, including a white kufi, a miswak, a silver ring and RGCI's urinalysis policy. The Wheeler affidavit discusses the Islamic faith in detail and provides information as to what practices and beliefs are mandated and which are optional. However, I have not relied on either of these affidavits. I have determined that defendants are entitled to summary judgment with respect to plaintiff's religious property, urinalysis and religious diet claims, and certain other claims, on the basis of a lack of plaintiff's own evidence and qualified immunity. As such, I will deny plaintiffs' motion without prejudice. If defendants seek to admit the affidavits to prove the remaining issues at a later date, plaintiff may refile his objection then.

## XII. CONCLUSION

Remaining are plaintiff Juan M. Perez's claims under RLUIPA and Free Exercise Clause regarding the denial of his request to hold RGCI's 2003 'Eid-ul-Fitr feast at the religiously appropriate time and the denial of his request for an 'Eid-ul-Adha feast or

33

celebration at RGCI in 2004. A close reading of plaintiff's complaint and other submissions indicates that only defendants Endicott, Timm and Campbell played a role in denying these requests. Certain other defendants denied plaintiff's after-the-fact grievances regarding the requests, but "[o]nly persons who cause or participate in the violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). "Ruling against a prisoner on an administrative grievance does not cause or contribute to the violation." Id. As such, I will dismiss all of the other defendants from this action.

For the foregoing reasons,

IT IS ORDERED that defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff Rahman S. Abdullah, and the claims he brought against defendants, are **DISMISSED FROM THIS ACTION**.

**IT IS FURTHER ORDERED** that defendants Matthew J. Frank, Steve Casperson, Cindy O'Donnell, Richard Raemisch, John Ray, Sandy Hautamaki, Ana Boatwright, Suzanne Dehaan, Sally Wess, Thomas Gozinske, Ronald Beyah and Sergeant Falke are **DISMISSED FROM THIS ACTION**.

**IT IS FURTHER ORDERED** that plaintiff's motion in limine is **DENIED WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin, this 28 day of March, 2008.

/s_____
LYNN ADELMAN
District Judge

34